UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID WOOD, </br></br> Plaintiff, </br></br> v. </br></br> BANK OF AMERICA, N.A., </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 24-cv-11430-DJC </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                    **March 24, 2025**

**I.   Introduction**

Plaintiff David Wood ("Wood") has filed this lawsuit against Defendant Bank of America, N.A. ("BANA") alleging unfair and deceptive practices under Mass. Gen. L. c. 93A, § 2 ("Chapter 93A") ("Count I"), violation of the Electronic Funds Transfer Act ("EFTA") under 15 U. S. C. § 1693 ("Count II"), negligence ("Count III"), breach of contract ("Count IV"), breach of the implied covenant of good faith and fair dealing ("Count V"), conversion ("Count VI"), unjust enrichment ("Count VII") and negligent infliction of emotional distress ("Count VIII"). D. 1-4. BANA has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 10. For the reasons stated below, the Court ALLOWS the motion to dismiss. D. 10.

**II.   Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

1

omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III.    Factual Background

The following facts are drawn from Wood's amended complaint, D. 1-4, and are accepted as true for the purposes of resolving the motion to dismiss.

On July 7, 2023, Wood entered into a consulting agreement (the "Agreement") with TRADE IBAU GMBH USA LLC ("Trade Ibau"), a limited liability company based in New York. D. 1-4 ¶ 7. Under the Agreement, Wood agreed to purchase computer equipment with his credit cards and ship them to Trade Ibau, which would sell the equipment to third-party buyers abroad. Id. ¶ 8. Trade Ibau agreed to pay Wood a flat monthly consulting fee of $10,400 per month plus 25% of proceeds from the sales. Id.

To convince Wood that the Agreement was legitimate, Trade Ibau wired $8,231.00 on July 26, 2023 to pay off an outstanding balance which Wood had on his BANA credit card ending in 6125. Id. ¶ 9. Trade Ibau sent Wood an email confirming that the $8,231.00 had been sent to BANA. Id. ¶ 10. Wood contacted BANA by phone to confirm that there was no outstanding

balance on the credit card ending in 6125.[1]  Id.  After receiving confirmation that the balance was paid off, Wood closed that credit card to ensure the payment could not be retracted by Trade Ibau. Id. ¶ 11.

Convinced that his BANA credit card ending in 6125 was closed and that the Agreement with Trade Ibau was legitimate, Wood made additional purchases using other BANA credit cards. Id. ¶ 12.  On July 26, 2023, Wood used a BANA credit card ending in 5014 to purchase and ship four laptop computers to Trade Ibau, costing $7,086.79.  Id. ¶ 13.  That same day, Wood used the same credit card to purchase computer equipment for Trade Ibau, costing $9,453.57.  Id. ¶ 14.  On August 2, August 3, and August 8, 2023, Wood used another credit card, one ending in 0208, to purchase and ship computer equipment to Trade Ibau, costing $22,816.84.  Id. ¶ 15.

On August 7, 2023, Trade Ibau paid Wood a total of $40,501.41 to reimburse him for his credit card expenditures.  Id. ¶ 16.  On August 10, 2023, Trade Ibau, pursuant to the Agreement, paid Wood the monthly consulting fee of $10,400 and 25% of the sales proceeds ($5,379), totaling $15,779.  Id. ¶ 17.  As of August 10, 2023, Trade Ibau had purportedly paid a total of $56,280.41 to Wood's credit card accounts ending in 0208, 5014 and 6125.  Id. ¶¶ 18–19.

On August 21, 2023, Wood contacted BANA to confirm that the funds had been credited to his accounts.  Id. ¶ 21.  As alleged, BANA informed Wood in writing and over the phone that the money was remanded to Trade Ibau per its request.  Id.  BANA allegedly remanded the funds without notifying Wood and without issuing a suspicious activity report ("SAR").  Id. ¶¶ 22–24.

---

[1] On August 29, 2024, Wood filed an affidavit attaching his T-Mobile phone record as exhibit.  D. 13.  "In ruling on whether the plaintiff has stated an actionable claim [under Rule 12(b)(6)], the inquiring court must consider only the complaint, documents annexed to it; the court cannot consider affidavits and miscellaneous documents proffered by parties, *unless* such other materials are fairly incorporated within the complaint or are susceptible to judicial notice." Bourgeois v. Blue Cross Blue Shield of Massachusetts, 531 F. Supp. 3d 407, 414 (D. Mass. 2021) (emphasis in original), which is not the situation here.  Accordingly, the Court has not relied upon the affidavit and attachments in resolving this Rule 12(b)(6) motion, but has assumed the truth of the allegations in the complaint to be true as the Court must do in considering the motion.

That same day, Wood emailed BANA to notify it that the transaction was fraudulent and demanded that BANA return the money it had remanded to Trade Ibau. Id. ¶ 25. Wood also directed BANA's attention to a July 1, 2023 Better Business Bureau ("BBB") scam tracker posting which allegedly legitimized Wood's claims. Id. ¶ 26. As alleged, BANA refused to refund Wood and did not review the posting. Id. ¶¶ 25–26.

## IV. Procedural History

Wood initially filed this action in Bristol Superior Court on March 4, 2024, D. 1 ¶ 1, and filed an amended complaint on May 28, 2024. Id. ¶ 2. On May 30, 2024, BANA removed the action to this Court. Id. at 1. BANA has now moved to dismiss the complaint. D. 10. The Court heard the parties on the pending motion and took the matter under advisement. D. 14.

## V. Discussion

### A. Count I: Unfair and Deceptive Practices (Mass. Gen. L. c. 93A)

Chapter 93A prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2(a). To state such a claim, "a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was the cause of the injury." Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161 (2018) (quoting Mass. Gen. L. c. 93A, § 2(a)); Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 615–16 (2009)). Here, Wood alleges that BANA had engaged in unfair and deceptive conducts causing him "actual monetary damages" by (1) remanding funds from Wood's credit card accounts, (2) refusing to return to the funds to Wood despite having been notified that Trade Ibau's remand request was fraudulent and (3) representing to Wood that his credit card account ending in 6125 was paid off by Trade Ibau.

4

D. 1-4 ¶¶ 27, 37–39. BANA argues that Wood has failed to state a claim for a Chapter 93A violation because even if BANA's conducts were unfair and deceptive, these allegations do not support a reasonable inference that BANA was the cause of Wood's financial loss. D. 10-1 at 6.

To plead causation, a plaintiff must allege that the defendant's conduct is both the factual and proximate cause of his or her injury. See Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016). A defendant's unfair or deceptive conduct is the factual cause of the plaintiff's loss if the plaintiff's injury "would not have occurred 'but for'" the defendant's conduct. Markarian v. Connecticut Mut. Life Ins. Co., 202 F.R.D. 60, 68 (D. Mass. 2001) (quoting Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 84–85 (D. Mass. 1998)). A defendant's unfair and deceptive conduct is the proximate cause of the plaintiff's injury if the injury is a foreseeable consequence of the act. See id.

Other sessions of the Court have held that a bank's conduct, even if unfair and deceptive, does not qualify as either the factual or proximate cause of a plaintiff's injury under Chapter 93A if the injury was caused by the fraudulent or criminal acts of a third party. See Maio v. TD Bank, N.A., No. 22-cv-10578-AK, 2023 WL 2465799, at * 8 (D. Mass. Mar. 10, 2023); King v. Wells Fargo Bank, N.A., No. 19-cv-10065-ADB, 2019 WL 3717677, at *4 (D. Mass. Aug. 7, 2019). For example, in King, the plaintiffs alleged that the defendant bank violated Chapter 93A by failing, among other things, to "adopt or adhere to banking practices to confirm information on incoming wires" and to "take steps to protect customers and third parties from criminal activity . . . ," which allegedly enabled a third party to defraud the plaintiffs. King, 2019 WL 3717677, at *4. The Court held that although the defendant's alleged failures to act "may have created an environment . . . in which fraudulent conduct was more likely to occur," none of these allegations qualified as a factual or proximate cause of the plaintiffs' loss because "the actual loss sustained . . . was caused by the criminal act of a third party," not by the defendant. Id.

Similarly, Wood has failed to allege plausibly a causal relationship between his financial loss and BANA's alleged unfair and deceptive conduct because the loss he sustained was not caused by BANA but by Trade Ibau. As alleged, it was Trade Ibau that entered into the Agreement with Wood. D. 1-4 ¶ 7. Likewise, it was Trade Ibau that allegedly deceived Wood into making further purchases by convincing him that the credit card ending in 6125 was paid off. Id. ¶ 9. Lastly, it was Trade Ibau that sought to remove the funds from Wood's credit card accounts through BANA's remand procedure. Id. ¶ 21. Because Trade Ibau was the direct and primary cause of Wood's injury, even assuming *arguendo* that BANA's conduct departed from standard banking protocols as Wood asserts, id. ¶ 24, Wood still has failed to satisfy Chapter 93A's causation element. See King, 2019 WL 3717677, at *4. For the foregoing reasons, the Court allows the motion to dismiss as to Count I.[2]

### B.     Count II:  EFTA (15 U.S.C. § 1693)

The EFTA was enacted to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The Act "applies to electronic fund transfers from a 'consumer account.'" Sanford v. MemberWorks, Inc., 625 F.3d 550, 560 (9th Cir. 2010) (quoting 15 U.S.C. § 1693a(2)). Here, Wood alleges that BANA's refusal to return the funds it had remanded to Trade Ibau and its failure to conduct a reasonable investigation into Trade Ibau's remand request constituted violations of the EFTA. D. 1-4 ¶¶ 45–46. BANA, for its part, argues that the EFTA is inapplicable because the

---

[2] Given this basis for dismissal, the Court does not reach BANA's alternative argument that the Chapter 93A claim fails because Wood failed to serve properly a pre-suit demand letter. D. 10-1 at 7.

alleged fraudulent transactions made by Trade Ibau involved credit card accounts, which "do not meet the definition of 'account' as defined by the EFTA." D. 10-1 at 9.

The EFTA provides, in relevant part, that "the term 'account' means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(j) of this title) . . . established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2). Thus, on its face, the EFTA "specifically excludes" from coverage "an occasional or incidental credit balance in an open end credit plan." Bersaw v. Northland Grp. Inc., No. 14-cv-128-JL, 2015 WL 1097402, at *3 n.3 (D.N.H. Mar. 11, 2015) (quoting 15 U.S.C. § 1693a(2)). An "open end credit plan" is "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(j)).

It appears that courts in this Circuit have yet to determine whether, under the EFTA, "open end credit plan" includes credit card accounts. At least two courts have touched upon the issue in the context of another statute, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a, which incorporates the EFTA's definition of "account." See Allen v. Lustig, Glaser & Wilson P.C., No. 15-cv-30052-MGM, 2016 WL 54192, *3 (D. Mass. Jan. 5, 2016) (citing 15 U.S.C. § 1681a(r)(4)) (explaining that "the FCRA defines an account by way of reference" to the EFTA's definition in 15 U.S.C. § 1693a(2)); Bersaw, 2015 WL 1097402, at *3 (citing 15 U.S.C. 1681a(r)(4)) (stating that the FCRA incorporates "the definition of 'account' set forth in the [EFTA]). In Allen, the court rejected the plaintiff's argument that the defendants violated the FCRA by pulling his credit card report in an attempt to collect a debt because his unpaid credit card account had been excluded from FCRA coverage as "an occasional or incidental credit balance on an open end credit plan" that "does not fall under the definition of an account." Allen, 2016 WL 54192, at *3. In Bersaw,

7

the court observed that "credit card accounts are generally considered to be open end credit plans." Bersaw, 2015 WL 1097402, at *3 n.3 (citations omitted).

Bersaw's observation, id., is in line with rulings by courts outside of the First Circuit that have agreed that, under the EFTA, credit card accounts qualify as "open end credit plan[s]" and as such fall outside the statute's coverage. See, e.g., Sanford, 625 F.3d at 560 (concluding that the EFTA "does not apply to credit-based transactions") (citing Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1328 (7th Cir. 1997)); White v. Chase Bank USA, N.A., No. 16-cv-00176-BR, 2017 WL 1131898, at *5 (E.D.N.C. Mar. 24, 2017) (holding that "because the EFTA deals with electronic funds transferred directly from bank accounts, it applies to debit cards but not credit cards") (citing Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1328 (7th Cir. 1997)); Shames-Yeakel v. Citizens Fin. Bank, 677 F. Supp. 2d 994, 1006–07 (N.D. Ill. 2009) (stating that the plaintiffs' "home equity line of credit" was a "credit account" which qualified as "an open end credit plan of the type explicitly exempted from coverage of the EFTA").

As alleged, Trade Ibau's fraudulent transactions involved Wood's credit card accounts. D. 1-4 ¶ 19. Because these transactions involved credit card accounts, which are "open end credit plans," they are excluded from the EFTA's coverage applying the logic of the similar rulings by other courts cited above. 15 U.S.C. § 1693a(2); see, e.g., Sanford, 625 F.3d at 560. Given the Court's conclusion that the EFTA is inapplicable to Wood's claim for this reason, the Court allows the motion to dismiss as to Count II.

### C.   Count III:  Negligence

"To prevail on a negligence claim, a plaintiff must [plausibly allege] that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 447 Mass. 141, 146 (2006).

Wood alleges that BANA has "breached its duty of care as a financial institution engaged in the extension of credit" by "recklessly and carelessly disregarding [Wood]'s email and BBB scam tracker, failing to issue a [SAR] then causing [Wood] financial injury and damage to his credit." D. 1-4 ¶ 53. Courts, however, have routinely held that "'a bank's relationship to its customers [is] simply [] one of creditor and debtor . . .' – an arm's-length, business like relationship." Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 195 (D. Mass. 2006) (alterations in original) (quoting Adams Co-operative Bank v. Greenberg, 212 B.R. 422, 428 (Bankr. D. Mass. 1997)). "The relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law." MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013). Because the relationship alleged between the parties here is one of bank and customer, it does not give rise to a duty of care, a necessary element for a negligence claim. Accordingly, Wood has failed to state a claim for negligence.

Even assuming *arguendo* that BANA owed Wood a duty of care, his negligence claim still fails because it is barred by the economic loss doctrine. Under Massachusetts law, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." In re TJX Companies Retail Sec. Breach Litig., 564 F.3d 489, 498 (1st Cir. 2009) (quoting Aldrich v. ADD Inc., 437 Mass. 213, 222 (2002)). Wood argues that the economic loss doctrine is inapplicable because he has alleged emotional distress which "includes tangible and measurable consequences that go beyond mere financial loss." D. 11 at 5. The economic loss rule, however, "bars recovery for emotional damages in the absence of allegations of physical harm." Ahern v. Sig Sauer, Inc., No. 21-cv-11007-DJC, 2021 WL 5811795, at *2 n. 2 (D. Mass. Dec. 7, 2021) (citing Lewis v. Gen. Elec. Co., 37 F. Supp. 2d 55, 59 (D. Mass. 1999)). For all of these aforementioned reasons, the Court allows the motion to dismiss as to Count III.

9

### D.     Count IV:  Breach of Contract

To state a claim for breach of contract, a plaintiff must plead "(1) that the parties had an agreement supported by valid consideration; (2) that plaintiff[] w[as] ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiff[] w[as] damaged." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).  Essential to such a claim is the existence of a contract.  See id. at 194–95.  "Thus, a claim for breach of a written contract must either (1) quote pertinent contractual language; (2) contain a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect." Foss v. Marvic, 365 F. Supp. 3d 164, 167 (D. Mass. 2019), aff'd, 994 F.3d 57 (1st Cir. 2021).  Whichever method a plaintiff chooses, he must ensure that the complaint describes with sufficient specificity the contract's "relevant terms, its duration, and when it was formed." Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship, 347 F. Supp. 3d 61, 66 (D. Mass. 2018).  Moreover, the complaint must also identify "what obligations were imposed on each of the parties by the alleged contract." Buck v. American Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007) (quoting Doyle, 103 F.3d at 195)).

Here, Wood alleges that in failing to return the funds, BANA has breached its financing agreement with him.  D. 1-4 ¶ 56.  The alleged financing agreement is not attached to the complaint and the complaint does not provide a description of "[its] terms . . . , its duration, or even when it was formed." Doyle, 103 F.3d at 195.  Additionally, the complaint also lacks allegations identifying "what obligations were imposed on each of the parties by the alleged contract." Hogan v. Teamsters Loc. 170, 495 F. Supp. 3d 52, 58 (D. Mass. 2020) (quoting Alenci v. Hometown Am. Mgmt., LLC, No. 19-cv-12244-LTS, 2020 WL 2515872, at *4 (D. Mass. May 15, 2020)).  Wood's breach of contract claim, thus, rests on the conclusory statement that BANA has breached the financing agreement.  Such conclusory statement, without more, "is insufficient to allege the existence of an enforceable contract." Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC,

No. 20-cv-10565-FDS, 2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021).  Accordingly, in the absence of plausible allegations that an enforceable contract exists, Wood has failed to state a claim for breach of contract.  See Doyle, 103 F.3d at 195.

Even if this Court could accept the allegation as true in Wood's opposition to the motion to dismiss that the financing agreement "required BANA to manage the credit accounts responsibly and to notify [Wood] of any significant actions taken on those accounts," D. 11 at 6, such generalized descriptions of the agreement does not support a breach of contract claim because they too "fail[] to state the nature of the alleged contract with any specificity" given that there "is no presentation of the terms of [the] contract, its duration, or even when it was formed." Doyle, 103 F.3d at 195; see WNAC, LLC v. Verizon Corp. Servs. Grp., Inc., No. 21-cv-10750-ADB, 2022 WL 17752132, at *7 (D. Mass. Dec. 19, 2022) (noting that "a complaint must plead the specific provisions of the contract that were allegedly breached") (quoting Anderson v. Greene, 774 F. App'x 694, 697 (2d Cir. 2019)).

Accordingly, Wood has failed to state a claim for breach of contract and, therefore, the Court allows the motion to dismiss as to Count IV.

### E.      Count V:  Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract."  Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp., 441 Mass. 376, 385 (2004). Because "the implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." Massachusetts Eye & Ear Infirmary v. QLT Photopherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005).  As previously discussed, Wood has failed to allege plausibly the existence of a contract between him and BANA.  Accordingly, Wood cannot now state a claim for breach of the implied

covenant of good faith and fair dealing based on the same contract. See id. Accordingly, the Court allows the motion to dismiss as to Count V.

      **F.**      <u>**Count VI: Conversion**</u>

To state a claim for conversion under Massachusetts law, a "plaintiff must [plausibly allege] that (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." <u>United States v. Peabody Const. Co., Inc.</u>, 392 F. Supp. 2d 36, 37 (D. Mass 2005) (quoting <u>Evergreen Marine Corp. v. Six Consignments of Frozen Scallops</u>, 4 F.3d 90, 95 (1st Cir. 1993)). "Money can be the subject of a claim for conversion provided it is a specific pool or fund of money in which the plaintiff has a possessory interest." <u>Wollaston Indus., LLC v. Ciccone</u>, No. 19-cv-10678-PBS, 2019 WL 6841987, at *2 (D. Mass. Dec. 16, 2019).

Wood alleges that BANA is liable for conversion for remanding the funds to Trade Ibau from his credit card accounts "without his knowledge or consent." D. 1-4 ¶ 62. A credit card transaction, however, is one in which "a cardholder borrows funds from an issuer for a grace period or longer." <u>Com. v. Ryan</u>, 79 Mass. App. Ct. 179, 184 (2011). Thus, payments made to pay down a balance on a credit card necessarily belongs to the credit card issuer. Here, the funds were purportedly sent by Trade Ibau to Wood's three BANA credit card accounts, D. 1-4 ¶ 19, which were then used to pay off his credit balances. D. 11 at 7. Because, as alleged, the funds were used to pay off Wood's credit card accounts, they belonged to BANA, not Wood. Accordingly, the Court allows the motion to dismiss as to Count VI.

### G.    Count VII: Unjust Enrichment

"Unjust enrichment is the 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" Columbia Plaza Assocs. v. Ne. Univ., 493 Mass. 570, 588–89 (2024) (quoting Sacks v. Dissinger, 488 Mass. 780, 789 (2021)). To state a claim for unjust enrichment, "[a] plaintiff must [allege plausibly] that (1) he or she conferred a measurable benefit on the defendant, (2) he or she reasonably expected compensation from the defendant, and (3) the defendant accepted the benefit with knowledge of the plaintiff's reasonable expectation." Id. at 589.[3]

Here, Wood does not allege that BANA itself was unjustly enriched, but that it enabled Trade Ibau's unjust enrichment by remanding the funds from his accounts without his knowledge or consent or legal justification.  D. 1-4 ¶ 66.  Thus, the Court construes this claim as one for aiding and abetting unjust enrichment.  To prevail on a claim of aiding and abetting unjust enrichment, Wood must allege "that [Trade Ibau] [was unjustly enriched]; (2) that [BANA] knew [Trade Ibau was unjustly enriched]; and (3) that [BANA] actively participated in or substantially assisted in [Trade Ibau's unjust enrichment]." Massachusetts Port Auth. v. Turo Inc., 487 Mass. 235, 244 (2021) (quoting Go-Best Assets, Ltd. V. Citizens Bank of Mass., 463 Mass. 50, 64 (2012)).

As to the first element, the complaint contains sufficient factual allegations to support a reasonable inference that Trade Ibau was unjustly enriched.  First, as alleged, Wood "conferred a

---

[3] The Court rejects BANA's argument that Wood cannot plead unjust enrichment because he had also pled a breach of contract claim.  D. 10-1 at 16.  It is correct that "the existence of a contractual relationship between parties typically precludes an unjust enrichment claim arising out of that contract." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 931 (1st Cir. 2014) (citing Metro. Life Ins. Co. v. Cotter, 464 Mass. 623, 641 (2013)).  Nonetheless, "a party can plead alternative causes of action for breach of contract and unjust enrichment 'where there is a dispute over the existence, scope, or enforceability of the putative contract,'" Alantra LLC v. Apex Indus. Techs. LLC, 636 F. Supp. 3d 223, 236 (D. Mass. 2022) (quoting Grossman v. Geico Cas. Co., No. 21-2789, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022)), as there is here.

13

measurable benefit," Columbia Plaza, 493 Mass. at 589, on Trade Ibau when he expended monies to purchase laptop computers on its behalf. D. 1-4 ¶¶ 13-15. Second, pursuant to the Agreement, Wood reasonably expected that both his expenses and service would be compensated. See id. ¶¶ 7–8. Third, Trade Ibau, as party to the Agreement, knew that Wood had such expectations and even allegedly paid Wood in accordance with said expectations. Id. ¶¶ 16–17. Lastly, Trade Ibau's retention of the computers without compensating Wood as allegedly required under the Agreement violated "fundamental principles of justice or equity and good conscience," Columbia Plaza, 493 Mass. at 589, because it resulted in unjust enrichment for Trade Ibau and an unjust detriment to Wood. Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009).

The second element requires Wood to allege plausibly that BANA had actual knowledge that Trade Ibau was being unjustly enriched. See In re TelexFree Sec. Litig. ("TelexFree I"), 357 F. Supp. 3d 70, 77 (D. Mass. 2019) (applying Massachusetts law and holding that "[a]n aiding and abetting claim demands a showing of 'actual knowledge' of the underlying wrongdoing"). Even as alleged, BANA had no actual knowledge of the Agreement between Wood and Trade Ibau. D. 1-4 ¶¶ 7–8. In addition, BANA allegedly had no actual knowledge of any allegations of fraud or wrongdoing in connection to Trade Ibau until it was notified by Wood of the same in his email demanding the remand's reversal. Id. ¶ 25. Accordingly, the complaint contains no factual allegations to support a reasonable inference that BANA had actual knowledge of Trade Ibau's unjust enrichment. See TelexFree I, 357 F. Supp. 3d at 77 (dismissing an aiding and abetting fraud claim because the plaintiff has failed to allege plausibly that the defendant banks had any actual knowledge of the fraud allegedly committed by their client).

The third element of aiding and abetting requires that Wood allege plausibly that BANA "actively participated in or substantially assisted in [the] commission of the tort." Turo, 487 Mass.

at 244 (quoting Go-Best Assets, Ltd., 463 Mass. at 64). In the banking context, "[t]he provision of routine bank services typically does not constitute substantial assistance" unless the bank "has actual knowledge that its routine services are assisting a customer in committing a specific tort." In re TelexFree Sec. Litig. ("TelexFree II"), 626 F. Supp. 3d 253, 272 (D. Mass. 2022) (citations omitted). The facts alleged do not support a reasonable inference that BANA had actual knowledge that Trade Ibau was unjustly enriched, they likewise do not support the inference that BANA had actual knowledge that Trade Ibau was using its services to support said unjust enrichment. TelexFree II, 626 F. Supp. 3d at 273 (concluding that the defendant bank's decision to maintain some accounts used by the alleged fraudulent party after learning of the underlying fraud was insufficient to support an inference that the bank had actual knowledge that these accounts were connected to the alleged fraudulent scheme); Go-Best Assets, Ltd., 463 Mass. at 64 (dismissing the plaintiff's aiding and abetting claims because "there [was] no evidence" that the defendant bank "actively participated in or substantially assisted" in any of the torts committed by the third party).

For the reasons stated above, the Court allows the motion to dismiss as to Count VII.

### H.   Count VIII:  Negligent Infliction of Emotional Distress

To prevail on a claim for negligent infliction of emotional distress, Wood must plead: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by object symptomatology, i.e., objective corroboration of the emotional distress alleged; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 77 (D. Mass. 2020). "As with any sort of negligence, negligence in the context of an emotional distress claim requires that the defendant have owed plaintiff a duty that was breached in some way." Lockwood v. Madeiros, No. 18-cv-40143-DHH, 2018 WL 4087938, at *8 (D. Mass. Aug. 27, 2018) (quoting Delmonte v.

Laidlaw Envtl. Servs., Inc., 46 F. Supp. 2d 89, 98 (D. Mass. 1999)).  Wood alleges that BANA was negligent by disregarding Wood's email and BBB scam tracker and by failing to issue a SAR and as a result Wood "experience[d] psychological trauma, severe heart problems and blood pressure causing him to have to make numerous visits to the hospital."  D. 1-4 ¶¶ 70–71.

Here, the allegations underlying Wood's negligent infliction of emotional distress claim are identical to the allegations underlying his negligence claim in Count III.  See id. ¶¶ 53, 70–71.  As previously discussed, Wood has failed to state a claim for negligence because the complaint does not plausibly allege that BANA owed him a duty of care.  Accordingly, Wood's negligent infliction of emotional distress claim "must also fail" for similar reason.  Doe v. Emerson Coll., 153 F. Supp. 3d 506, 517 (D. Mass. 2015) (citing Urman v. South Boston Sav. Bank, 424 Mass. 165, 171(1997)) (granting defendants' motion for judgment on the pleadings on plaintiff's negligent infliction of emotional distress claim because plaintiff had failed to state a claim for negligence based on the same allegations).

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS the motion to dismiss.  D. 10.

**So Ordered.**

/s Denise J. Casper
United States District Judge